MAIN, Justice.
Jerry Elliott, the plaintiff in an action pending in the Conecuh Circuit Court seeking worker’s compensation benefits, petitions this Court for writs of mandamus directing the Court of Civil Appeals to quash the writs of mandamus that court issued to the Conecuh Circuit Court in Ex parte International Paper Co., 80 So.3d 903 (Ala.Civ.App.2010). Those writs directed the Conecuh Circuit Court to transfer the underlying action to the Butler Circuit Court. We grant Elliott’s petitions and issue the writs.
I. Factual Background and Procedural History
International Paper Company (“IP”), or Chapman Forest Products, Inc. (“Chapman”), owned and operated a plywood-manufacturing plant in Butler County at all times material to this action. On November 3, 2006, IP executed an exclusive 20-year pulpwood-support agreement and an exclusive 10-year log-supply agreement with two timber companies pursuant to which those companies were to supply IP’s plywood plant with timber harvested in Conecuh County, which is adjacent to Butler County. On March 31, 2007, IP executed an exclusive log-supply agreement with four timber companies to supply its plant with timber harvested in Conecuh County. The agreements were recorded in the Conecuh Probate Court. On December 31, 2007, IP assigned all three of its agreements for the supply of timber to Chapman. Chapman began operating the Butler County plant in January 2008. On December 28, 2009, Chapman closed the plywood-manufacturing plant and recorded documents in the Conecuh Probate Court terminating the pulpwood-support agreement and the log-supply agreements IP had assigned to it.
Elliott has lived in Conecuh County for over 15 years and for 21 years worked as a machine operator at the plywood-manufacturing plant owned by IP and then Chapman. In December 2007, he allegedly sustained an injury to his left shoulder while pushing wood through a machine during the course of his employment with IP. In May 2008, he allegedly sustained a similar injury to his right shoulder during the course of his employment with Chapman. On August 24, 2009, Elliott filed an action in the Conecuh Circuit Court seeking worker’s compensation benefits for his shoulder injuries, both of which occurred at the plywood-manufacturing plant located in Butler County.
IP and Chapman filed motions to dismiss Elliott’s action or, in the alternative, to transfer the case to Butler County. Both IP and Chapman contended that venue was improper in Conecuh County but proper in Butler County. Elliott opposed those motions. After a hearing, the trial court denied the motions to dismiss or to transfer. IP and Chapman each filed a petition for a writ of mandamus in the Court of Civil Appeals, seeking review of the trial court’s order denying their motions to dismiss or to transfer.[1] The Court of Civil Appeals granted the petitions and directed the trial court to transfer this action to Butler County.
II. Standard of Review
“This Court reviews de novo the issuance of a writ of mandamus by the Court of Civil Appeals. Rule 21(e), *911 Ala. R.App. P. Review of a writ of mandamus issued by the Court of Civil Appeals is properly sought through a petition for the writ of mandamus to this Court. Rule 21(e), Ala. R.App. P. ‘ “ ‘Mandamus is a drastic and extraordinary writ to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ ” ’ Ex parte Sears, Roebuck & Co., 895 So.2d 265[, 268] (Ala.2004) (quoting Ex parte Mardis, 628 So.2d 605, 606 (Ala.1993) (quoting in turn Ex parte Ben-Acadia, Ltd., 566 So.2d 486, 488 (Ala.1990))). ‘The petitioner bears the burden of proving each of these elements before the writ will issue.’ Ex parte Glover, 801 So.2d 1, 6 (Ala.2001) (citing Ex parte Consolidated Publ’g Co., 601 So.2d 423 (Ala.1992)).”
Ex parte Vance, 900 So.2d 394, 397 (Ala.2004).
“The proper method for obtaining review of a denial of a motion for a change of venue is to petition for the writ of mandamus.” Ex parte Alabama Great Southern R.R., 788 So.2d 886, 888 (Ala.2000). Moreover, the petitioner has the burden of proving that venue is improper, and “on review of an order transferring or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial judge.” Ex parte Finance America Corp., 507 So.2d 458, 460 (Ala.1987).
III. Analysis
IP and Chapman argue that this case should be transferred to Butler County because, they say, § 6-3-7, Ala.Code 1975, states that, as to a foreign or domestic corporation, venue is proper:
“(1) In the county in which a substantial part of the events or omissions giving rise to the claim occurred ...; or
“(2) In the county of the corporation’s principal office in this state; or
“(3) In the county in which the plaintiff resided ... at the time of the accrual of the cause of action, if such corporation does business by agent in the county of the plaintiffs residence; or
“(4) If subdivisions (1), (2), or (3) do not apply, in any county in which the corporation was doing business by agent at the time of the accrual of the cause of action.”
The parties do not contest that the principal place of business of both IP and Chapman was, at the time material to this case, in Butler County and that Elliott’s injuries occurred in Butler County. Elliott lives in Conecuh County, and he argues that venue in Conecuh County is proper under subdivision (3) because, he argues, IP and Chambers did business by agent in Cone-cuh County at the time he filed his action in that they had exclusive supply agreements pursuant to which they purchased timber from landowners in Conecuh County. Ex parte Charter Retreat Hosp., 538 So.2d 787, 789 (Ala.1989) (the pertinent inquiry for determining whether venue is proper under § 6-3-7(a)(3) is whether a corporation did business in the county at the time the action was instituted). IP and Chapman argue that neither of them did business by agent in Conecuh County at the pertinent time and that, therefore, the only proper venue for this action is Butler County. Rule 82(c), Ala. R. Civ. P., provides that when more than one claim or party has been joined in an action, “the suit may be brought in any county in which any one of the claims could properly have been brought.” If either IP or Chapman did business by agent in Conecuh County, then venue is proper there. See *912 Ex parte Smith Wrecker Serv., Inc., 987 So.2d 534, 536 (Ala.2007) (argument in case involving two defendants that venue is improper in a certain county is not well taken unless venue in that county is improper as to both defendants).
As the parties requesting a transfer of the case, IP and Chapman bear the burden of proving that venue in Conecuh County is improper. If the activity in Conecuh County by either of them is sufficient to qualify as “doing business by agent” in that county under § 6 — 3—7(a)(3), then venue is proper in Conecuh County, and the Court of Civil Appeals should not have issued the writs of mandamus directing a transfer of the case to Butler County. If that activity is not sufficient, however, the Court of Civil Appeals properly issued the writs of mandamus directing the trial court to transfer the case to Butler County. Elliott maintains that he submitted proof that both IP and Chapman were doing business in Conecuh County at all pertinent times and therefore were subject to venue there, even though proof as to one defendant alone is sufficient to establish that venue is proper in Conecuh County.
To establish that a corporation does business in a particular county for purposes of venue, past isolated transactions are inconclusive. Ex parte Harrington Mfg. Co., 414 So.2d 74 (Ala.1982). A corporation does business in a county for purposes of § 6-3-7 if it performs with some regularity in that county some of the business functions for which the corporation was created. Ex parte SouthTrust Bank of Tuscaloosa Cnty., N.A., 619 So.2d 1356, 1358 (Ala.1993). However, this Court has considered extraneous relationships insufficient to constitute “doing business.” For example, in Ex parte Parsons & Whittemore Alabama Pine Construction Corp., 658 So.2d 414 (Ala.1995), and Ex parte Real Estate Financing, Inc., 450 So.2d 461 (Ala.1984), this Court held that for a construction company and real-estate financing company, respectively, retaining the services of an attorney in a county on a case-by-case basis did not constitute doing business in that county. Hiring an attorney was tangential to the fulfillment of their primary business functions. IP’s and Chapman’s primary business function of operating a plywood-manufacturing plant, however, depends on obtaining timber from suppliers with whom it has exclusive long-term contracts.
The Court of Civil Appeals identified evidence before the trial court indicating that IP’s “ ‘ordinary course of business’ involved entering into purchase obligations as to components, such as ‘certain pulpwood, wood chips, raw materials, energy and services,’ used to prepare finished products.” 80 So.3d at 906-07. That court also identified evidence indicating that Chapman undertook as a core corporate function “the purchase and cutting of timber.” 80 So.3d at 907. As to evidence submitted by Elliott, the Court of Civil Appeals stated:
“According to the filings submitted by [Elliott], Chapman, as of January 1, 2008, assumed all the rights and duties inuring to IP under various logging agreements. The logging agreements themselves do not appear in the record, but the ‘termination’ document ... indicates that they were entered into by IP with third parties in [2006 and] 2007 and that they evidently obligated those third-party entities (1) to provide a specified volume of timber products to Chapman and (2) to ‘make available’ cutting rights to certain land. The record indicates that the ‘termination’ document was filed in the probate court of three counties — Conecuh County, Butler County, and Covington County — im *913 plying that the foregoing obligations applied to lands situated in those counties .... The wording of the ‘termination’ document does not specify that any portion of the timber products must come from Conecuh County, only that they could.... ”
80 So.3d at 907. The Court of Civil Appeals drew an inference that, “from all that appears in the record, all the timber supplied to Chapman pursuant to the log agreements came from Butler County and Covington County,” and it concluded that venue was improper in Conecuh County because neither IP nor Chapman was doing business there at the time Elliott filed his action. 80 So.3d at 907.
Judge Pittman disagreed. In his dissent, he states:
“The termination-of-log-agreements document states that various third-party entities had agreed to supply and sell to IP (and later Chapman) ‘logs and other wood products for use by IP [and later Chapman] at certain of its saw mills and wood product facilities,’ including the Butler County facility. Further, the memorandum of the log-supply agreement was ‘recorded in every county where timberlands are situated which are subject to the Log Agreements ’ (emphasis added). The inference that can properly be drawn, and the one that we should accept in reviewing the petitions for the writ of mandamus, is that there would have been no need to record the log-agreement memorandum in Conecuh County if IP (and later Chapman) was not to be supplied any logs that came from Conecuh County under the agreements originally entered into by IP.”
80 So.3d at 908 (Pittman, J., dissenting).
Elliott contends that the Court of Civil Appeals’ inference that no timber from Conecuh County had actually been cut under the agreements was speculative. He argues that the trial court correctly found, and Judge Pittman, in his dissent, correctly reasoned, that the filing of long-term timber agreements by IP and Chapman in the Conecuh Probate Court constituted “doing business” in Conecuh County and that that finding should have ended the inquiry.
According to the documents submitted by Elliott, both IP and Chapman secured exclusive timber-harvesting agreements for Conecuh County timber during the time Elliott was employed by them. The primary purpose of the plywood-manufacturing plant operated by IP and then Chapman was to produce a plywood product made from a wood supply, and the documents recorded by IP in the Conecuh Probate Court to secure the 10- and 20-year exclusive-supply agreements is indicative of doing business in Conecuh County. An exclusive right to buy timber from landowners in order to have an adequate supply to make plywood for 10 and 20 years is clearly part of the “business function” of making wood products and one that would be exercised with “some regularity.” IP’s suggestion that such long-term contracts constitute an “isolated transaction” ignores the business reality that a 10- and 20-year exclusive right to timber harvested in Conecuh County establishes that all other companies are eliminated from harvesting timber — i.e., doing business — on that particular Conecuh County land.
This case is analogous to Ex parte Scott Bridge Co., 834 So.2d 79 (Ala.2002). In Scott Bridge, a former employee who lived in Chambers County filed a retaliatory-discharge action in Chambers County against Scott Bridge, a bridge-building company headquartered in Lee County. Scott Bridge moved to dismiss or, in the alternative, to transfer the case to Lee County, claiming that venue in Chambers *914 County was improper because it did not do business in Chambers County in that it had never constructed a bridge there. The evidence showed that Scott Bridge had purchased from vendors in Chambers County in excess of $50,000 worth of supplies necessary for building bridges; this Court held that that constituted doing business in Chambers County. Based on this Court’s reasoning in Scott Bridge, we conclude that, because the timber-supply agreements gave IP and Chapman the exclusive rights to timber on land in Conecuh County, because the agreements were recorded in the Conecuh Probate Court, and because the purpose of the agreements was to fulfill IP’s and Chapman’s principal corporate function of manufacturing plywood products, IP and Chapman were doing business in Conecuh County.
In order to be entitled to the writs of mandamus issued by the Court of Civil Appeals, IP and Chapman had the burden of showing that they had a clear legal right to the relief they requested. A writ of mandamus should not have been granted unless they made a clear showing of error on the part of the trial court. Ex parte Greenetrack, Inc., 25 So.3d 449 (Ala.2009). They did not do so. The trial court correctly denied their motions to transfer this case to Butler County; therefore, the Court of Civil Appeals should not have issued the writs directing that transfer.
IV. Conclusion
Elliott’s petitions for the writ of mandamus are granted; the Court of Civil Appeals is directed to quash the writs of mandamus it issued on December 30, 2010, in Ex parte International Paper Co., 80 So.3d 903, requiring the Conecuh Circuit Court to transfer the case to Butler County-
1100479 — PETITION GRANTED; WRIT ISSUED.
1100497 — PETITION GRANTED; WRIT ISSUED.
MALONE, C.J., and STUART, PARKER, and WISE, JJ., concur.
WOODALL, J., concurs in the result.
BOLIN, MURDOCK, and SHAW, JJ., dissent.

. Chapman also contended in the trial court that even if venue was proper in Conecuh County, the case should be transferred to Butler County pursuant to the doctrine of forum non conveniens, § 6-3-21.1, Ala.Code 1975. However, Chapman did not rely upon the doctrine of forum non conveniens in seeking mandamus relief in the Court of Civil Appeals, and it does not do so in this Court.