WISE, Justice.
The petitioners, Interstate Freight USA, Inc. (“Interstate Freight USA”), Interstate Specialized, Inc. (“Interstate Specialized”), Interstate Freight, Inc. (“Interstate Freight”) (hereinafter collectively referred to as “the Interstate companies”), Charles A, Browning, and Donald R. Raughton, Sr., filed a petition for a writ of mandamus asking this Court to direct the Baldwin Circuit Court to vacate its order denying their motion to transfer the underlying action to the St. Clair Circuit Court and to enter an order granting the motion. We grant the petition and issue the writ.

Facts and Procedural History

The plaintiff below, Kevin L. Vogler, was hired as a vice president/general manager for Interstate Specialized and Interstate Freight USA. Vogler alleged that, in December 2013, he was working for another company and had become interested in acquiring the transportation branch of the Interstate companies; that he had entered into negotiations with Browning, the president of Interstate Freight USA and Interstate Specialized, and Raughton, a business consultant for *563 the Interstate companies; that Browning and Raughton were acting on behalf of the Interstate companies; that the parties had agreed that “Vogler could acquire a minority interest in the trucking business over a two year period and, after two years of employment with the Interstate companies, would have the option of buying out the interest of Defendant Browning”; that Browning and Raughton had made representations to him regarding his salary and benefits; and that, based on those representations, Vogler left his previous employment and entered into separate employment contracts with Interstate Specialized and Interstate Freight USA. Both contracts provided that they would commence on May 19, 2014, “for a guaranteed period of not less than two (2) years” and contained provisions regarding Vogler’s salary and benefits. Vogler also alleged that, on February 24, 2015, he met with Raughton and Browning and that they told him “that the businesses were being shut down for financial reasons and his position was being terminated.”
On July 6, 2015, Vogler sued the Interstate companies, Browning, and Raughton. In his complaint, Vogler asserted claims of breach of contract and fraud.
On August 17, 2015, the petitioners filed a motion to dismiss for failure to state a cause of action or, in the alternative, for a change of venue. In their motion, they alleged that venue was not proper in Baldwin County and sought to have the case transferred to St. Clair County. They also argued that, even if venue was proper in Baldwin County, the case should be transferred to St. Clair County pursuant to the doctrine of forum non conveniens. In support of their motion, the petitioners attached affidavits from Raughton, Browning, and Amy Browning Strickland, one of the owners of Interstate Freight.
On September 2, 2015, Vogler filed a response to the petitioners’ motion to dismiss or, in the alternative, for a change of venue. On September 8, 2015, after conducting a hearing, the trial court denied the petitioners’ motion.[1] On October 1, 2015, the petitioners filed this petition for a writ of mandamus, challenging the order only insofar as it denied their motion for a change of venue.

Standard of Review

“‘The proper method for obtaining review of a denial of a motion for a change of venue in a civil action is to petition for the writ of mandamus.’ Ex parte Alabama Great Southern R.R., 788 So.2d 886, 888 (Ala.2000). ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). Moreover, our review is limited to those facts that were before the trial court. Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala.1998).”
Ex parte Pike Fabrication, Inc., 859 So.2d 1089, 1091 (Ala.2002).

Discussion

The petitioners argue that the trial court erroneously denied the motion to transfer this case to the St. Clair Circuit Court.
I.
First, the petitioners argue that the trial court should have granted their motion for a change of venue because, they say, venue was not proper in Baldwin *564 County. It is undisputed that venue was not proper in Baldwin County as to Raughton or Browning. The issue in this case, however, is whether venue was proper in Baldwin County as to any of the Interstate companies.
“ ‘ “The question of proper venue for an action is determined at the commencement of the action.” ’ Ex parte Pike Fabrication, Inc., 859 So.2d 1089, 1091 (Ala.2002) (quoting Ex parte Pratt, 815 So.2d 532, 534 (Ala.2001)). If venue is improper at the outset, then, upon motion of the defendant, the court must transfer the case to a court where venue is proper. Pike Fabrication, 859 So.2d at 1091....
[[Image here]]
“ ‘ “The burden of proving improper venue is on the party raising the issue and on review of an order transferring or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial judge.” Ex parte Finance America Corp., 507 So.2d 458, 460 (Ala.1987). In addition, this Court is bound by the record, and it cannot consider a statement or evidence in a party’s brief that was not before the trial court. Ex parte American Res. Ins. Co., 663 So.2d 932, 936 (Ala.1995).’
“Pike Fabrication, 859 So.2d at 1091.”
Ex parte Guarantee Ins. Co., 133 So.3d 862, 867 (Ala.2013).
Section 6-3-7(a), Ala.Code 1975, provides, in pertinent part:
“All civil actions against corporations may be brought in any of the following counties:
“(1) In the county in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of real property that is the subject of the action is situated; or
“(2) In the county of the corporation’s principal office in this state; or
“(3) In the county in which the plaintiff resided, or if the plaintiff is an entity other than an individual, where the plaintiff had its principal office in this state, at the time of the accrual of the cause of action, if such corporation does business by agent in the county of the plaintiffs residence; or
“(4) If subdivisions (1), (2), or (3) do not apply, in any county in which the corporation was doing business by agent at the time of the accrual of the cause of action.”
It is uncontested that all three of the Interstate companies have their principal place of business in St. Clair County. Additionally, the petitioners presented evidence indicating that a substantial part of the actions or omissions that give rise to Vogler’s claims occurred in St. Clair County, However, Vogler argues that venue is proper in Baldwin County under § 6-3-7(a)(3), Ala. Code 1975.
In his affidavit, Vogler stated that he was a resident of Spanish Fort, Alabama, which is located in Baldwin County, and that he had lived in Spanish Fort since April 1999. Accordingly, he has satisfied the first prong of § 6-3-7(a)(3) by establishing that he was a resident of Baldwin County at the time of the accrual of the cause of action. Therefore, the issue in this case is whether, at the commencement of the action, any of the Interstate companies did business by agent in Baldwin County.
“In Ex parte Elliott, 80 So.3d 908, 912 (Ala.2011), this Court held:
“‘To establish that a corporation does business in a particular county for purposes of venue, past isolated transactions are inconclusive. Ex parte Harrington Mfg. Co., 414 So.2d *565 74 (Ala.1982). A corporation does business in a county for purposes of § 6-3-7 if it performs with some regularity in that county some of the business functions for which the corporation was created. Ex parte South-Trust Bank of Tuscaloosa Cnty., N.A., 619 So.2d 1356, 1358 (Ala.1993).’
“(Emphasis added.) This Court has also held that ““not every act done within the corporate powers of a foreign corporation will constitute doing business within the meaning of the statute.’ ” ’ Ex parte Greenetrack, Inc., 25 So.3d 449, 453 (Ala.2009) (quoting Ex parte Scott Bridge Co., 834 So.2d 79, 81 (Ala.2002), quoting in turn Ex parte Charter Retreat Hosp., Inc., 538 So.2d 787, 790 (Ala.1989))....”
Ex parte Guarantee Ins. Co., 133 So.3d at 872.
“A critical distinction exists between corporate defendants currently doing business in a county (the test applied by subsection (a)(3)) and those that formerly did business in the county (the test applied only when venue is proper in no other county). As this Court has said, ‘isolated transactions in the past are inconclusive in determining venue.’ Ex parte Pike Fabrication, [Inc.], 859 So.2d [1089,] 1093 [ (Ala.2002) ] (emphasis added). Here we are concerned only with whether Perfection can fairly be said to be conducting business currently in Hale County.
“In addition, our holdings make clear that a corporation ‘does business’ under the statute if, ‘ “ ‘with some regularity, it performs there some of the business functions for which it was created.’ ” ’ Ex parte Pike Fabrication, 859 So.2d at 1093 (quoting Ex parte Wiginton, 743 So.2d 1071, 1074-75 (Ala.1999), quoting in turn Ex parte SouthTrust Bank of Tuscaloosa, 619 So.2d 1356, 1358 (Ala. 1993)). We have found pretransaction inquiries within a county to be an insufficient basis for placing venue there, Ex parte Pike Fabrication, 859 So.2d at 1093, because business inquiries are essentially an ‘exercise of corporate powers incidental to ... corporate business functions.’ Ex parte Scott Bridge Co., 834 So.2d at 81. However, regularly performing the work for which the company exists is the exercise of its business functions, and would therefore fall within the ambit of ‘doing business’ within a county. Id. at 82.”
Ex parte Perfection Siding, Inc., 882 So.2d 307, 310-11 (Ala.2003).
In his affidavit, Vogler asserted:
“Interstate Specialized, Inc., and Interstate Freight USA, Inc., are commercial trucking companies. They employed truck drivers. They held the DOT licenses and other licenses and permits necessary to operate as commercial trucking companies. Interstate Freight, Inc., held title to the trucks, trailers and other equipment used by the operating companies. Interstate Freight, Inc., charged rent of at least $42,000 per month to the operating companies for the use of the trucks, trailers and equipment.”
The petitioners presented affidavits from Strickland, Raughton, and Browning. In her affidavit, Strickland asserted that Interstate Freight does not do business by agent in Baldwin County. In his affidavit, Browning stated:
“Interstate Freight USA, Inc. and Interstate Specialized, Inc. do not own or lease any facilities, offices, real property or post office boxes in Baldwin County. Interstate Freight USA, Inc. and Interstate Specialized, Inc. maintain no records, documents or files in Baldwin County, Interstate Freight USA, Inc. and Interstate Specialized, Inc. do not have any control over, nor do they attempt to exercise control over, where *566 their employees choose to reside. Interstate Freight USA, Inc. and Interstate Specialized, Inc. do not do business with any regularity in Baldwin County and were not doing business by agent in Baldwin County when the complaint at issue was filed.
“Interstate Freight USA, Inc. and Interstate Specialized, Inc. hire, train, review, supervise, and if necessary terminate their employees from their principal place of business in St. Clair County. Interstate Freight USA, Inc.’s and Interstate Specialized, Inc.’s principal places of business are all located in St. Clair County.
“Interstate Freight USA, Inc. and Interstate Specialized, Inc. maintain their corporate books and records, including their employment records in St. Clair County.”
Finally, in his affidavit, Raughton stated:
“I have made a search of the freight loads hauled by Interstate Freight USA, Inc., from July 1, 2014 through July 19, 2015 and determined 61 of 2,243 loads were delivered into Baldwin County and that no load originated from Baldwin County.
“Interstate Freight USA, nor Interstate Specialized, Inc., performed business by agent in Baldwin County from January 2014 through July 15, 2015. The principal place of business for Interstate Freight USA, Inc., Interstate Specialized Inc., and Interstate Freight, Inc., is St. Clair County, Alabama,”
Interstate Freight USA and Interstate Specialized are commercial trucking companies. Therefore, the delivery of loads constitute business functions for which the companies were created. In support of their argument that the Interstate companies did not regularly do business in Baldwin County, the petitioners appear to rely solely on the fact that the number of loads they delivered into Baldwin County constituted only a small percentage of their overall business. However, the true issue in this case is whether the Interstate companies were regularly physically present and doing business by agent in Baldwin County.
The evidence presented to the trial court indicated that, during an approximately 54-week period, the Interstate companies delivered 61 loads to Baldwin County. Thus, the trial court was presented with evidence that, during the roughly 54-week period preceding the filing of the complaint in this case, the Interstate companies were physically present in Baldwin County at the time each of those 61 loads were delivered. That evidence would support a finding that the Interstate companies regularly did business in Baldwin County. Additionally, the petitioners did not present any evidence as to the dates on which Interstate Freight delivered any of those 61 loads. Without information regarding the dates of those deliveries, we cannot determine whether those loads were delivered throughout the 54-week period on a regular basis or whether the loads were delivered in a short period as part of an isolated transaction. Therefore, the petitioners did not present any evidence to negate a finding that their physical presence in Baldwin County to deliver those 61 loads constituted regularly conducting business in Baldwin County.[2]
*567 The petitioners did not present sufficient evidence to establish a prima facie showing that the Interstate companies did not regularly do business by agent in Baldwin County. Accordingly, the petitioners did not satisfy their burden of establishing that venue in Baldwin County was improper.
II.
Next, the petitioners argue that, even if venue was proper in Baldwin County, the trial court exceeded its discretion in denying them motion to transfer the action from Baldwin County to St. Clair County based on the doctrine of forum non conveniens. Specifically, they contend that St. Clair County has a strong connection to the case because, they say, all the material events that gave rise to Vogler’s claims occurred there. In contrast, the petitioners assert, Baldwin County has, at best, only a tenuous connection to the case—namely, the fact that Vogler resides there. The petitioners assert that the interest-of-justice prong of Alabama’s forum non conveniens statute, § 6-3-21.1, Ala.Code 1975, mandates a transfer to St. Clair County.
“ ‘A party moving for a transfer under § 6-3-21.1 has the initial burden of showing, among other things, one of two factors: (1) that the transfer is justified based on the convenience of either the parties or the witnesses, or (2) that the transfer is justified “in the interest of justice.”’ Ex parte Indiana Mills & Mfg., Inc., 10 So.3d 536, 539 (Ala.2008). Although we review a ruling on a motion to transfer to determine whether the trial court exceeded its discretion in granting or denying the motion, id., where ‘the convenience of the parties and witnesses or the interest of justice would be best served by a transfer, § 6-3-21.1, Ala.Code 1975, compels the trial court to transfer the action to the alternative forum.’ Ex parte First Tennessee Bank Nat’l Ass’n, 994 So.2d 906, 912 (Ala.2008) (emphasis added).”
Ex parte Wachovia Bank, N.A., 77 So.3d 570, 573 (Ala.2011).
Section 6-3-21.1 provides, in pertinent part:
“With respect to civil actions filed in an appropriate venue, any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action might have been properly filed and the case shall proceed as though originally filed therein.”
(Emphasis added.)
“Historically, the plaintiff has had the initial choice of venue under the system established by the legislature for determining venue. Before the enactment of § 6-3-21.1 by the Alabama Legislature in 1987, a plaintiffs choice of venue could not be disturbed on the basis of convenience to the parties or the witnesses or in the interest of justice. With the adoption of § 6-3-21.1, trial courts now have ‘the power and the duty to transfer a cause when “the interest of justice” requires a transfer.’ Ex parte First Family Fin. Servs., Inc., 718 So.2d 658, 660 (Ala.1998) (emphasis added). In First Family, this Court noted that an argument that trial judges have almost unlimited discretion in determining whether a case should be transferred under § 6-3-21.1 ‘must be considered in light of the fact that the Legislature used the word “shall” instead of the word “may” in § 6-3-21.1.’ 718 So.2d at 660. This Court has further held that ‘Alabama’s forum non conveniens statute is compulsory.’ Ex parte Sawyer, 892 So.2d 898, 905 n. 9 (Ala.2004).”
Ex parte Autauga Heating & Cooling, LLC, 58 So.3d 745, 748-49 (Ala.2010).
*568 “The ‘interest of justice’ prong of § 6-3-21.1 requires ‘the transfer of the action from a county with little, if any, connection to the action, to the county with a strong connection to the action.’ Ex parte National Sec. Ins. Co., 727 So.2d [788,] 790 [ (Ala.1998) ]. Therefore, ‘in analyzing the interest-of-justice prong of § 6-3-21.1, this Court focuses on whether the “nexus” or “connection” between the plaintiffs action and the original forum is strong enough to warrant bm-dening the plaintiffs forum with the action.’ Ex parte First Tennessee Bank Nat’l Ass’n, 994 So.2d 906, 911 (Ala.2008). Additionally, this Court has held that ‘litigation should be handled in the forum where the injury occurred.’ Ex parte Fuller, 955 So.2d 414, 416 (Ala. 2006). Further, in examining whether it is in the interest of justice to transfer a case, we consider ‘the burden of piling court services and resources upon the people of a county that is not affected by the case and ... the interest of the people of a county to have a case that arises in their county tried close to public view in their county.’ Ex parte Smiths Water & Sewer Auth., 982 So.2d 484, 490 (Ala.2007).”
Ex parte Indiana Mills & Mfg., Inc., 10 So.3d 536, 540 (Ala.2008).
The Court of Civil Appeals was presented with a similar situation in Ex parte West Fraser, Inc., 129 So.3d 286 (Ala. Civ. App.2013). In that case, Michael Hunt was injured while working at West Fraser’s saw mill located in Lee County, and he was treated for his injuries in Lee County. Hunt subsequently filed a worker’s compensation action against West Fraser in the Chambers Circuit Court. That action was transferred to the Lee Circuit Court.
At some point after Hunt filed his worker’s compensation action, West Fraser terminated Hunt’s employment. The notice of termination was mailed from Lee County, and Hunt received that notice at his home in Chambers County. Hunt then filed an action in the Chambers Circuit Court in which he alleged a retaliatory-discharge claim related to his filing a worker’s compensation claim. West Fraser moved for a change of venue of the retaliatory-discharge action to the Lee Circuit Court, but the Chambers Circuit Court denied that motion. West Fraser filed a petition for a writ of mandamus in the Court of Civil Appeals.
In its petition, West Fraser argued that venue was not proper in Chambers County and, alternatively, that the case should be transferred to the Lee Circuit Court based on the doctrine of forum non conveniens. In addressing West Fraser’s claim, the Court of Civil Appeals addressed the issue of where Hunt’s injury with regard to the retaliatory-discharge action occurred as follows:
“In Ex parte SouthTrust Bank of Tuscaloosa County, N.A., 619 So.2d 1356 (Ala.1993), William Pritchett defaulted on the loan he had obtained from South-Trust Bank of Tuscaloosa County (‘the bank’) to purchase a vehicle, and the bank repossessed the vehicle. The bank informed Pritchett that it had sold the vehicle for $500 and applied that amount to the balance of Pritchett’s loan. Pritchett alleged that the vehicle had been sold for more than $500, but only $500 was applied to his balance. He filed a civil action in the Montgomery Circuit Court alleging against the bank claims of fraud, conversion, abuse of process, wanton/willful conduct, and malicious prosecution. The bank sought to have the action transferred to the Tuscaloosa Circuit Court. When the Montgomery Circuit Court denied the motion, the bank filed a petition for a writ of mandamus. Id. at 1358.
*569 “The bank asserted that the alleged misrepresentations to Pritchett about the actual resale value of the vehicle were made through telephone calls and through mail sent from Tuscaloosa. However, Pritchett argued that he received those communications in Montgomery and that, therefore, his ‘injuries’ ‘occurred’ in Montgomery County. Id. Our supreme court wrote:
“‘In Age-Herald Publishing Co. v. Huddleston, 207 Ala. 40, 92 So, 193 (1922), a libel action, this Court established that the term “injury” for purposes of § 6-3-7 refers to the wrongful act or omission of the corporate defendant, not to the resulting damage to the plaintiff, and thus determined that venue for such an injury is proper where a wrongful act was committed, not where the damage resulted. We note that the Court deviated from its Age-Herald rule in the later case of Kenney v. Gurley, 208 Ala. 623, 95 So. 34 (1923). There, this Court held that where libelous matters are passed through the mail from one individual to another, the “injury” takes place where the matter is received. Unlike the holding in Age-Herald, however, the Kenney holding did not hinge upon § 6-3-7; rather, it was based upon a libel action between individuals, and its fact-specific rationale is inapposite here.’
“Id. at 1358.
“Our supreme court went on to hold that Pritchett’s alleged injuries occurred in Tuscaloosa County, where the bank made telephone calls and sent mail to Pritchett, not in Montgomery County, where Pritchett received those communications. Id.
“In Ex parte Pikeville Country Club, 844 So.2d 1186, 1189 (Ala.2002), our supreme court explained that it found the analysis of SouthTrust Bank particularly persuasive in interpreting the current version of § 6-3-7(a)(l), stating:
“ ‘We construe “the events or omissions giving rise to the claim” to be a clear reference to the wrongful acts or omissions of the corporate defendant. Having so construed the statute, we see no reason to' abandon the holding of Ex parte SouthTrust Bank. Therefore, we conclude that venue in this "case is improper in Covington County as to the [defendant], because the event giving rise to [the plaintiffl’s claims—the mailing of the letter containing the alleged misrepresentations—occurred in Marion County, where the letter was mailed, and not in Covington County, where [the plaintiff] received the letter. See also Ex parte Wiginton, 743 So.2d. 1071 (Ala.1999).’
“In this case, Hunt alleged that West Fraser fired him from his job operating a gang saw at its Opelika saw mill in retaliation for his having filed a workers’ compensation action. The evidence was undisputed that the decision to terminate Hunt’s employment was made in Opelika, and the letter notifying Hunt of West Fraser’s decision was mailed from Opelika. Accordingly, we conclude that all of West Fraser’s alleged wrongful acts occurred in Lee County, not in Chambers County.”
129 So.3d at 289-90. After concluding that venue.was proper in Chambers County, the Court of Civil Appeals addressed West Fraser’s argument that the interest-of-justice prong of § 6-3-21.1 required that the case be transferred to the Lee Circuit Court, concluding:.
“In this case, there is a strong connection between Hunt’s retaliatory-discharge action and Lee County. As discussed, all the conduct made the basis of the action occurred in Lee County, and *570 Hunt’s ‘injury’ in this case occurred in Lee County. His underlying physical injury—the subject of his workers’ compensation action—occurred at West Fraser’s facility in Lee County. Hunt was treated for that injury in Lee County. The workers’ compensation case, which is related to this case, is being heard in the Lee Circuit Court.
“On the other hand, the connection between the retaliatory-discharge action and Chambers County is virtually nonexistent. Hunt lives in Chambers County. The business that West Fraser conducted in Chambers County and that serves as the basis for venue in that county has no material connection with this case. There are no relevant facts in this case involving Chambers County. To echo our supreme court in [Ex parte] Autauga Heating & Cooling, [58 So.3d 745 (Ala.2010),] we see no need to burden Chambers County with an action that arose in Lee County simply because Hunt lives there and because West Fraser conducted business unrelated to this case there. Accordingly, we conclude that the trial court abused its discretion in denying West Fraser’s motion for a change of venue.”
Ex parte West Fraser, Inc., 129 So.3d at 293-94.
In this case, the petitioners have established that St. Clair County has a stronger connection to the claims in this case than has Baldwin County. In his affidavit, Raughton stated, in pertinent part:
“I was personally involved in the negotiations with Kevin Vogler, the execution of two written agreements, Mr. Vogler’s work with Interstate Freight USA, Inc., and his subsequent termination.
[[Image here]]
“... The negotiations by Mr. Vogler for employment previously occurred in St. Clair County, then execution of the written agreement (Exhibits 1 and 2 of Plaintiffs Complaint) occurred in St. Clair County, his job duties originated and his office was located in St. Clair County. The termination of Mr. Vogler by Interstate Freight USA,' Inc., occurred in St. Clair County at its principal office. All employment payroll and benefits originated and occurred from St. Clair County. All meetings with Mr. Vogler about job duties, job performance or lack thereof, occurred in St. Clair County. The events giving rise to this litigation, breach of contract, and representations of employment, all occurred in St. Clair County, Alabama. The email account used by Mr. Vogler while employed was controlled and accessed by servers in St. Clair County.”
Additionally, in his affidavit, Browning stated, in pertinent part:
“I was personally involved in the negotiations with Kevin Vogler, the execution of the two written agreements, Mr. Vo-gler’s work with Interstate Freight USA, Inc., and his subsequent termination.
[[Image here]]
“Interstate Freight USA, Inc. and Interstate Specialized, Inc. hire, train, review, supervise, and if necessary terminate their employees from their principal place of business in St. Clair County. Interstate Freight USA, Inc.’s and Interstate Specialized, Inc.’s principal places of business are all located in St. Clair County.
“Interstate Freight USA, Inc. and Interstate Specialized, Inc. maintain their corporate books and records, including their employment records in St. Clair County. The negotiations, execution and delivery surrounding the two agreements between Mr. Vogler’s employment occurred in St. Clair County. Mr. Vogler’s job duties originated and his *571 office was located in St. Clair County. The termination of Mr. Vogler by Interstate Freight USA, Inc. occurred in St. Clair County at its principal office. All meetings with Mr. Vogler about his job duties, job performance or lack thereof, occurred in St. Clair County. The events giving rise to this litigation, breach of contract and the representation of employment, all occurred in St. Clair County, Alabama. The e-mail account used by Mr. Vogler while employed was controlled and accessed by servers in St. Clair County.
“During the negotiation, execution and delivery of the two written agreements related to this litigation only three persons were present in those meetings; Kevin Vogler; Donald R. Raughton, Sr.; and myself. While this litigation is ongoing and discovery has not begun, I anticipate that Donald R. Raughton, Sr. and myself will be the primary witnesses for the Defendants. Most if not all of the witnesses that the Defendants will offer for testimony reside in St. Clair County. Aside from the Plaintiff, none of the witnesses in this litigation reside in Baldwin County, but reside in St. Clair County, Alabama or DeKalb County, Alabama.”
Thus, the facts that were before the trial court indicate that all of the petitioners’ alleged wrongful conduct took place in St. Clair County, not in Baldwin County. Also, Vogler’s injuries in this case—the termination of his employment and the damage sustained as a result of the alleged fraudulent misrepresentations that induced him to enter into the employment agreement—occurred in St. Clair County.
Also, as was the ease in Ex parte West Fraser, the connection between Vogler’s claims in this action and Baldwin County was virtually nonexistent. Of the parties, Vogler is the only resident of Baldwin County. Further, based on the facts that are before this Court, Vogler did not present the trial court with evidence indicating that any potential witnesses in this case resided in Baldwin County. Additionally, Vogler did not present any argument or evidence to the trial court to establish that the business the Interstate companies conducted in Baldwin County and that formed the basis for venue in that county had a material connection with Vogler’s breach-of-contract and fraud claims against the petitioners. In his response in this Court, Vogler argues, for what appears to be the first time:
“In ordering that venue be transferred to Lee County, the West Fraser court discounted the impact of the business conducted by West Fraser in Chambers County: ‘the business that West Fraser conducted in Chambers County and that serves as the basis for venue in that county has no material connection with this case.’ 129 So.3d at 293.
“Contrary to Petitioners’ position, the same cannot be said for Interstate’s business in Baldwin County. Respondent Vogler was Executive Vice President and General Manager for Interstate. His contractual duties included ‘developing business from Employee’s own contacts, and developing relationships with existing and former IF customers’ and generally operating the business on a day to day basis. Complaint, Exhibit 1, page 1; Complaint, Exhibit 2, page 1. Therefore, the business that Interstate did in Baldwin County has a direct effect on whether Vogler can be said to have fulfilled the duties of his contractual relationship with Interstate and has a direct bearing on the claims alleged in his Complaint. Further, Interstate has filed a counterclaim against Vogler that alleges that Vogler failed ‘to perform under the terms and conditions of the contracts.’ Exhibit 3. So, to the extent that business in Baldwin County is part of Vogler’s responsibility as Executive Vice Presi *572 dent and General Manager, such business is material to the issues in this lawsuit. It is also very possible that Interstate’s customers in Baldwin County will be witnesses to show that Vogler performed the duties of his contracts by developing business from his contacts in Baldwin County.” ■
(Vogler’s brief, at pp. 12-13.)
In Part I of this opinion, we noted that the 61 loads that the Interstate companies delivered to Baldwin County between July Í, 2014, and July 15, 2015, was the business that formed the basis for venue in Baldwin County. However, Vogler has not presented any evidence to establish that those 61 loads were, in any way, connected to the claims presented in this case. Additionally, in his affidavit, Vogler asserted that, while he was employed by Interstate Freight USA and Interstate Specialized, Interstate Freight USA had transported at least 50 loads of precast concrete to the Alabama Department of Natural Resources in Gulf Shores and at least 10 loads to Quincy Compressor in Bay Minette, which are located in Baldwin County. However, even regarding those loads, Vogler did not include any evidence indicating that the delivery of those loads to Baldwin County was actually connected to the claims in this case. Rather, he appears to rely on nothing more than his general assertion that he was responsible for “generally operating the business on a day to day basis” to connect those deliveries to his claims.
Also, it appears that Vogler’s arguments in this regard are, at least in part, based on the petitioners’ answer and counterclaim in which they asserted a breach-of-contract claim alleging that Vo-gler had “fail[ed] to perform under the terms of the contracts.” Vogler has attached that answer and counterclaim as an exhibit to the response he filed in this Court. However, the petitioners’ answer and counterclaim were not filed in the trial court until October 2, 2015, which was after the trial court had already denied the petitioners’ motion for a change of venue.
“It is well settled that, ¾ a mandamus proceeding, this Court will not consider evidence not presented to the trial court.' Ex parte Cincinnati Ins. Co., 51 So.3d 298, 310 (Ala.2010). See Ex parte Ford Motor Credit Co., 772 So.2d 437, 442 (Ala.2000) (‘“On review by mandamus, we must look only at those facts before the trial court.’” (quoting Ex parte Baker, 459 So.2d 873, 876 (Ala.1984))). ‘[T]his Court is bound by the [materials before it], and it cannot consider a statement or evidence in a party’s brief that was not before the trial court.’ Ex parte Pike Fabrication, [Inc.,] 859 So.2d [1089,] 1091 [ (Ala.2002) ]. Accordingly, we have not considered those exhibits attached to Tinney’s answer in response to the mandamus petition. See Ex parte Pike Fabrication, 859 So.2d. at 1091, and Verbena United Methodist Church, 953 So.2d 395, 399 (Ala.2006) (refusing to consider an affidavit submitted in opposition to a mandamus petition because the affidavit was not before the trial court when that court rendered the decision under review).”
Ex parte East Alabama Med. Ctr., 109 So.3d 1114, 1117-18 (Ala.2012) (emphasis added). Because the petitioners’ answer and counterclaim were not before the trial court at the time it ruled on the motion for a change of venue, we will not consider the answer and counterclaim or any argument based on those' pleadings.
As shown by the foregoing, Baldwin County has only a very weak overall connection to the claims in this case, and St. Clair County has a much stronger connection. See Ex parte Manning, 170 So.3d 638 (Ala.2014); Ex parte Morton, 167 So.3d 295 (Ala.2014); Ex parte State Farm Mut. Auto. Ins. Co., 149 So.3d 1082 (Ala. *573 2014); and Ex parte Indiana Mills & Mfg., Inc., supra. Therefore, the interest-of-justice prong of the forum non conve-niens statute requires that the action be transferred to St. Clair County.

Conclusion

For the above-stated reasons, we conclude that venue was proper in Baldwin County. However, we conclude that the trial court exceeded its discretion in denying the motion for a change of venue based on the interest-of-justice prong of the forum non conveniens statute. Accordingly, we grant the petition for the writ of mandamus and direct the trial court, in the interest of justice, to enter an order transferring the case to the St. Clair Circuit Court.
PETITION GRANTED; WRIT ISSUED.
STUART, BOLIN, PARKER, SHAW, MAIN, and BRYAN, JJ., concur.
MURDOCK, J., dissents.

. The parties have not presented this Court with a transcript of the hearing.

. In his affidavit, Vogler included assertions regarding business transactions the Interstate companies conducted in Baldwin County before his employment was terminated in February 2015. However, Vogler did not file his complaint until July 6, 2015, Because the question is whether the Interstate companies regularly did business in Baldwin County at the time of the commencement of the proceedings, we will not consider those past transactions Vogler referenced in his affidavit for purposes of determining whether venue was proper in Baldwin County.