THOMPSON, Presiding Judge.
R.E. Garrison Trucking, Inc. ("Garrison"), petitions this court for a writ of mandamus directing the Washington Circuit Court ("the trial court") to vacate its order denying Garrison's motion for a change of venue and to enter an order transferring this workers' compensation action to the Cullman Circuit Court.
The materials submitted to this court in support of and in opposition to the petition indicate the following. According to the affidavit of James Hamm, the director of national accounts for Garrison, Garrison is a "primarily refrigerated truck-load carrier that transports food items between points in the United States." It is undisputed that Garrison's principal place of business is in Cullman County. In the underlying civil action, William D. Hennis alleged that he was an employee of Garrison when he suffered an on-the-job accident. The accident occurred in Cullman County. In its answer, Garrison acknowledged that Hennis injured his left shoulder in the accident.
Hennis also alleged in the complaint that he is a resident of Washington County. In support of its request for a change of venue, Garrison submitted documentary evidence, including Hennis's job application, which was completed in 2014, other employment documents, and medical forms completed in 2015, that showed Hennis's address to be in Semmes, which is in Mobile County. Garrison also submitted a certified copy of a page from the Alabama Secretary of State's voter-registration database showing that, in 2016, Hennis was registered to vote in Mobile County. The database also indicated that, from 1994 through 2000, Hennis had been registered to vote in Washington County.
Garrison also submitted evidence indicating that it did not do business in Washington County. In his affidavit, Hamm testified that he had reviewed Garrison's shipping and customer records for the previous 15 years and that Garrison had not delivered to or picked up a load from a single customer in Washington County. Hamm also said that, based on his review of personnel files for the same period, Garrison had not had any sales agents or company sales people who lived in Washington County.
In opposition to Garrison's submissions, Hennis submitted his affidavit and documentary evidence, including his pistol permit, his commercial driver's license, and vehicle registrations and loan documents completed in 2015, when he purchased a new vehicle, indicating that he lived in Chatom, in Washington County. In his affidavit, he stated that he had lived at the Chatom address for the past 15 years. He explained that, in 2014, he began using the Semmes address, where his former wife lived, for mailing purposes. He said that he lived alone at the Chatom address and that, because, he was gone for long periods driving for Garrison, he wanted "to be certain [he] got all [his] mail." He said that he could depend on his former wife to keep *18 his mail together to ensure that he would not "miss anything important."
Hennis also explained that, after the work-related injury to his shoulders, he "had a lot of trouble taking care of [his] personal needs-bathing, dressing, eating, driving," and, therefore, he stayed with his former wife in Semmes so that she could assist him. He said that he returned to the Chatom address as soon as he was able.
Hennis also submitted evidence regarding the issue of whether Garrison did business in Washington County. In his affidavit, he testified that he was acting as Garrison's agent when he parked and stored Garrison tractors and trailers on property he owned in Washington County ("the Washington County property"). No evidence was presented as to what Hennis meant by "storing" the tractors or trailers, i.e., whether they were merely parked for a night or a weekend or for longer periods. Hennis said that the tractors and trailers that were parked on the Washington County property were driven not only by him but by other Garrison drivers. He claimed that officers of Garrison specifically approved of the arrangement.
Hennis further testified that, at the request of Wyles Griffith, the president of Garrison, he recruited drivers for the company. Hennis acknowledged that he did not have the "final authority over who was hired or not hired," but, he said, he did not recall ever having recommended a driver who was not hired.
In rebuttal to Hennis's evidence, Garrison submitted additional evidence to demonstrate that it did not do business in Washington County. A number of Garrison employees, including Griffith, testified by affidavit that, contrary to Hennis's assertions in discovery responses, they had not given Hennis permission to park his tractor and a Garrison trailer on Hennis's property in Washington County when he was not driving. One of those employees, Tim Brown, stated that Garrison allowed an independent contractor to park his or her tractor and trailer at the driver's home for his convenience if the driver was at home for the weekend. However, Brown said, doing so did not further Garrison's business because it "actually takes a [Garrison] trailer out of service for the weekend because another independent-contractor driver cannot hook up to it and pull it."
As to Hennis's assertion that he recruited drivers for Garrison, Jessica Bennett, the safety coordinator for Garrison, testified by affidavit that independent contract drivers are paid bonuses for drivers they recruit to Garrison, but only if those recruits drive for a certain length of time. The drivers Hennis recruited, Bennett said, did not drive for Garrison the requisite length of time. She testified that company records showed that Hennis had not received any recruiting bonuses.
After reviewing the submissions of the parties on the issue of a change of venue, the trial court on March 9, 2017, entered an order in which it found that Hennis had presented sufficient evidence to "clearly establish" that, at all times material to this action, he was a resident of Washington County. In the order, the trial court also stated that, although the facts relating to Hennis's agency relationship with Garrison were in dispute, it concluded that Garrison was doing business by agent in Washington County at the time of Hennis's work-related accident. Specifically, the trial court noted that Hennis used the Washington County property to store Garrison tractors and trailers for his use and for the use of other Garrison drivers. The trial court also noted that Garrison caused or allowed Hennis to recruit new drivers in Washington County. The trial court determined that both the storage of tractors *19 and trailers and the recruitment of drivers were part of Garrison's business functions. Based on its conclusions, the trial court denied Garrison's motion for a change of venue. Garrison filed its petition for a writ of mandamus on April 19, 2017.
" ' "The proper method for obtaining review of a denial of a motion for a change of venue in a civil action is to petition for the writ of mandamus. Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 302 (Ala. 1986). 'Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995). 'When we consider a mandamus petition relating to a venue ruling, our scope of review is to determine if the trial court [exceeded] its discretion, i.e., whether it exercised its discretion in an arbitrary and capricious manner.' Id. Our review is further limited to those facts that were before the trial court. Ex parte American Resources Ins. Co., 663 So.2d 932, 936 (Ala. 1995)." '
" Ex parte Southeast Alabama Timber Harvesting, LLC, 94 So.3d 371, 373 (Ala. 2012) (quoting Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala. 1998) )."
Ex parte Tier 1 Trucking, LLC, 222 So.3d 1107, 1110 (Ala. 2016).
" ' "The burden of proving improper venue is on the party raising the issue and on review of an order transferring or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial judge." ' [ Ex parte Pike Fabrication, Inc., 859 So.2d 1089, 1091 (Ala. 2002) ] (quoting Ex parte Finance America Corp., 507 So.2d 458, 460 (Ala. 1987) ). If the movant makes a prima facie showing that a county is an improper venue, the burden shifts to the party asserting proper venue in that county to rebut the prima facie showing. Ex parte Alabama Med. Ctr., 109 So.3d 1114, 1116 (Ala. 2012) (citing Ex parte Movie Gallery, Inc., 31 So.3d 104, 109 (Ala. 2009) )."
Ex parte Hibbett Sporting Goods, Inc., 228 So.3d 1008, 1013 (Ala. Civ. App. 2017) (emphasis added).
Section 6-3-7, Ala. Code 1975, governs the determination of venue in a civil action against a corporation. That statute provides, in relevant part, that in such cases, venue is proper in, in addition to other enumerated counties,
"the county in which the plaintiff resided, or if the plaintiff is an entity other than an individual, where the plaintiff had its principal office in this state, at the time of the accrual of the cause of action, if such corporation does business by agent in the county of the plaintiff's residence."
§ 6-3-7(a)(3). Thus, based on § 6-3-7(a)(3), venue is proper in Washington County if Hennis resided there and if Garrison did business by agent in Washington County at the time of Hennis's on-the-job accident.
Garrison contends that Hennis's county of residence was Mobile County; Hennis claims that he resides in Washington County.
" 'Generally, the terms "residence" and "domicile" are not considered synonymous.... However, when determining venue, most jurisdictions, including Alabama, do consider the *20 terms synonymous.... The terms denote the place where the person is deemed in law to live and may not always be the place where the person is actually dwelling.'
" Ex parte Sides, 594 So.2d 93, 95 (Ala. 1992) (citing Ex parte Weissinger, 247 Ala. 113, 22 So.2d 510 (1945) )....
" 'A person's domicile is that place in which his habitation is fixed, without any present intention of removing, and it embraces (1) the fact of residence and (2) the intention to remain. As a general proposition a person can have but one domicile, and when once acquired is presumed to continue until a new one is gained facto et animo, and what state of facts constitutes a change of domicile is a mixed question of law and fact.'
" Weissinger, 247 Ala. at 117, 22 So.2d at 514."
Ex parte Coley, 942 So.2d 349, 352 (Ala. 2006) (footnote omitted).
Unlike in Coley and Ex parte Weissinger, 247 Ala. 113, 22 So.2d 510 (1945), this case does not appear to involve the question of whether Hennis had changed residences. Instead, the trial court was required to determine Hennis's residence as between two addresses that he listed on various documents as being his home address. Although documentary evidence was presented showing that Hennis had used an address in Semmes in Mobile County, as well as an address in Chatom in Washington County, as his "home address," Hennis stated in his affidavit that the Semmes address was that of his former wife. Hennis explained that, because he was frequently on the road, he wanted his mail sent to a secure address, and, he said, he knew he could count on his former wife to ensure that he received the mail that was delivered to her house. Hennis said that, although he stayed with his former wife after his injury so that she could assist him with his daily needs, he returned to his house in Chatom as soon as he was able. He said that he had lived at the Chatom address for 15 years. Although, as Garrison points out, the county in which Hennis is registered to vote is "a 'potent consideration,' " Harris v. McKenzie, 703 So.2d 309, 311 (Ala. 1997), it is not conclusive.
The trial court was presented with conflicting evidence as to Hennis's home address. Hennis offered testimony explaining why he had used the Semmes address on some documents. Other than documents listing an address, no evidence was presented to show that Hennis resided or intended to reside at the Semmes address. For example, there was no evidence from neighbors indicating that Hennis appeared to be living in Semmes or that he was involved in church or community activities in Semmes. Based on the materials before us, we cannot say that Garrison met its burden of proving that Hennis did not live in Washington County, nor can we say that the trial court clearly erred in determining that Hennis's residence was in Washington County.
Our next inquiry, then, is whether the trial court erred in determining that Garrison does business by agent in Washington County.
" 'In Ex parte Elliott, 80 So.3d 908, 912 (Ala. 2011), this Court held:
" 'To establish that a corporation does business in a particular county for purposes of venue, past isolated transactions are inconclusive. Ex parte Harrington Mfg. Co., 414 So.2d 74 (Ala. 1982). A corporation does business in a county for purposes of § 6-3-7 if it performs with some regularity in that county some of the business functions for which *21 the corporation was created. Ex parte SouthTrust Bank of Tuscaloosa Cnty., N.A., 619 So.2d 1356, 1358 (Ala. 1993)."
" '(Emphasis added.) This Court has also held that " ' "not every act done within the corporate powers of a foreign corporation will constitute doing business within the meaning of the statute." ' " Ex parte Greenetrack, Inc., 25 So.3d 449, 453 (Ala. 2009) (quoting Ex parte Scott Bridge Co., 834 So.2d 79, 81 (Ala. 2002), quoting in turn Ex parte Charter Retreat Hosp., Inc., 538 So.2d 787, 790 (Ala. 1989) )....'
" Ex parte Guarantee Ins. Co., 133 So.3d [862] at 872 [ (Ala. 2013) ]."
Ex parte Interstate Freight USA, Inc., 213 So.3d 560, 564-65 (Ala. 2016).
As mentioned, Garrison is a commercial trucking company that delivers loads across the United States. As our supreme court stated in Ex parte Interstate Freight USA, Inc., supra, "the delivery of loads constitute business functions for which [trucking] companies were created." 213 So.3d at 566. Hennis presented evidence indicating that Garrison drivers use the Washington County property to park and store Garrison tractors and trailers. The evidence is undisputed that, as a convenience to its drivers, Garrison allowed those drivers to park the tractors and/or trailers they were driving when they were home for the weekend. Hennis did not present evidence indicating that Garrison paid him or reimbursed him in any way when he allowed other drivers to use the Washington County property for parking or storage of tractors or trailers.
Garrison presented evidence indicating that, contrary to Hennis's assertions in his discovery responses, its officers or employees had not given Hennis express approval to allow other drivers to park or store tractors and trailers on the Washington County property. Garrison also pointed out that, if a tractor and trailer were parked or stored at a location other than its offices in Cullman County, other drivers did not have access to those vehicles so that they could be used to deliver other loads. Based on the materials before us, we cannot say that the parking or storing of tractors and/or trailers away from Garrison's premises furthered Garrison's business purposes. See Ex parte Interstate Freight USA, Inc., supra. Our research has revealed no legal authority that would support that proposition, and we are not prepared to reach such a conclusion under the facts of this case.
Similarly, we are unconvinced by Hennis's contention that his recruitment of drivers in Washington County was sufficient to constitute Garrison's doing business in that county for purposes of establishing venue. As mentioned, a corporation does business in a county for purposes of § 6-3-7 if it performs with some regularity in that county some of the business functions for which the corporation was created. Ex parte SouthTrust Bank of Tuscaloosa Cty., N.A., 619 So.2d 1356, 1358 (Ala. 1993).
In Ex parte Tyson Chicken, Inc., 72 So.3d 1, 4 (Ala. 2011), our supreme court wrote the following regarding the determination of venue in the context of hiring employees:
"[O]ur decisions do not indicate that hiring employees constitutes doing business by their employer in the county where those employees choose to live; venue is dependent on the decisions of the defendant corporation, not on the personal choices of its employees independent of their employment. See, e.g., Ex parte Greenetrack, Inc., 25 So.3d 449, 454 (Ala. 2009) (holding that an inter-county *22 bus service transporting gaming customers from Pickens County to Greene County, where gaming facility was located, was ' "incidental to [Greenetrack's] corporate business functions" ' and therefore did not constitute 'doing business' in Pickens County as those words were used in the venue statute, even though Greenetrack also had employees in Pickens County and advertised there (quoting Ex parte Scott Bridge Co., 834 So.2d 79, 81-82 (Ala. 2002) ))."
In this case, Griffith, the president of Garrison, testified by affidavit that Garrison never instructed Hennis to act as an agent of Garrison to recruit drivers in Washington County. Griffith said that Garrison encouraged its drivers to recruit new drivers by paying recruiting bonuses to drivers who referred other drivers to Garrison. To receive the bonus, the evidence showed, the recruited driver must drive for Garrison for a minimum period. Hennis never received a recruiting bonus for the people he referred to Garrison.
Just as hiring employees who lived in another county, Ex parte Tyson Chicken, Inc., supra, and operating a bus service for transporting gamers from Pickens County to Greene County so that those gamers could participate in activities at a gaming facility in Greene County, Ex parte Greenetrack, Inc., 25 So.3d 449, 454 (Ala. 2009), were considered too incidental to those corporations' business functions to constitute doing business in a certain county for venue purposes, based on the materials before us, we conclude that asking drivers to refer potential new drivers is "incidental to [Garrison's] corporate business functions" and is an insufficient activity to constitute Garrison's "doing business" in Washington County. Ex parte Scott Bridge Co., 834 So.2d 79, 81 (Ala. 2002) ; see also Ex parte Interstate Freight USA, Inc., supra. Accordingly, we hold that the trial court erred in determining that Garrison was regularly doing business by agent in Washington County. Because the evidence demonstrates that Garrison was not doing business in Washington County, venue is not proper in Washington County. Therefore, we grant Garrison's petition for a writ of mandamus. We direct the trial court to vacate its March 9, 2017, order denying Garrison's motion seeking a change of venue and to enter an order consistent with this opinion.
PETITION GRANTED; WRIT ISSUED.
Pittman, Moore, and Donaldson, JJ., concur.
Thomas, J., recuses herself.