DONALDSON, Judge.
Hibbett Sporting Goods, Inc., (“Hibbett Sporting Goods”), petitions this court for a writ of mandamus directing the Lamar Circuit Court (“the trial court”) to vacate its order denying Hibbett Sporting Goods’ motion for a change of venue and to enter an order transferring the underlying workers’ compensation action to the Jefferson Circuit Court. Hibbett Sporting Goods made a prima facie showing that venue was improper in Lamar County and that Jefferson County was a proper yenue. In response, the plaintiff, Keith Cantrell, argued that venue was proper in Lamar County because of his residency there and because, he asserted, Hibbett Sporting Goods did business, by agent in that county. For the reasons set forth below, we grant the petition and issue the writ.
Background
On July 15, 2016, Cantrell filed , in the trial court a complaint against Hibbett Sporting Goods seeking workers’ compensation benefits. Cantrell claimed- that he had been injured in Indiana while working for Hibbett Sporting Goods. On August 22, 2016, Hibbett Sporting Goods filed a motion to transfer the action to Jefferson County, asserting that Lamar County-was an improper venue. Hibbett Sporting Goods . supported its, motion to transfer with the affidavit of Aimee .Andrews, a manager of human resources for Hibbett Sporting Goods. In her affidavit, Andrews testified, in relevant part:
“[Hibbett Sporting-Goods] is a Delaware Corporation, With its principal place of business being located at 2700 Milan Court in Birmingham, Alabama which is located in Jefferson County. [Hibbett Sporting Goods] has a wholesale and logistics facility located at 201 Corporate Woods Drive in Alabaster, Alabama which is located in Shelby County. [Hibbett Sporting Goods] does not do business and has not done business, by agent or otherwise, in Lamar County, Alabama. [Hibbett Sporting Goods] does not have any offices located in Lamar County, Alabama. [Hibbett Sporting Goods] does not have assets located in Lamar County, Alabama. [Hibbett Sporting Goods] does not have any stores or warehouse facilities in Lamar County, Alabama.
“[Cantrell] was hired on April 15, 2007, as a CDL driver. He reported to the Transportation Manager in our wholesale and logistics facility at the Shelby County, Alabama location. On or about May 21, 2014, while working at a store in Shelbyville, Indiana, [Cantrell] reported that he was injured while ‘putting plywood onto wall and box of stadium chairs fell off and hit his knee making it twist.’ He thereafter received medical treatment initially by physicians in Birmingham,. Jefferson County, and *1011 then later by a physician in Tuscaloosa County, Alabama.” -
On October 7, 2016, Cantrell filed a reply to the motion to transfer. He contended that venue was proper in Lamar County pursuant to § 6-3-7(a)(3), Ala. Code 1975, which provides, in relevant part, that a civil action against a corporation may be brought in the county in which the plaintiff resides if the corporation does business by agent in that county. Cantrell asserted that, for the purpose of establishing venue, Hibbett Team Sales, Inc. (“Hibbett Team Sales”), a separate corporation, acted as an agent for Hibbett Sporting Goods in . Lamar County. Cantrell submitted an affidavit in which he testified that he resided in Lamar County both at the time of the accident and at the time of the filing of the workers’ compensation complaint. Cantrell also attached to his reply an annual report (“the Hibbett Sports annual report”) filed by Hibbett Sports, Inc. (“Hibbett Sports”);[1] a document prepared by Andrews titled “Employer’s First Report of Injury or Occupational Disease” (“the injury report”); a copy of the home page of the Web site for Hibbett Team Sales (“the Hibbett Team Sales home page”); an affidavit from Tommy Chism, the principal and a coach for an elementary school in Lamar County; and an affidavit from Mathew Byars, an assistant principal and a coach for a. high school in Lamar County. The Hibbett Sports annual report states, in relevant part:
“Our Company began in 1945 under the name Dixie Supply Company in Florence, Alabama. Although we initially specialized primarily in the marine and small aircraft business, by 1960 we were solely in the sporting goods business.... We became a public company in October.-1996 when we had 79 stores and were incorporated under the laws of the State of Delaware as Hibbett Sporting Goods, Inc. We incorporated under the laws of the State of Delaware as Hibbett Sports, Inc. in January 2007, and on February 10, 2007, Hibbett Sports, Inc. became the successor holding company for. Hibbett Sporting Goods, Inc., which is npw opr operating subsidiary.
“Today, we operate sporting goods stores in small and. mid-sized markets predominantly in the South, Southwest, Mid-Atlantic' and the Midwest. As of .January 31, 2015, we operated 988 stores consisting of 969 Hibbett Sports stores and 19 smaller-format Sports Additions athletic shoe stores in 31 states. Our primary retail format and growth vehicle is Hibbett Sports, an approximately 5,000 square foot- store located primarily in strip centers which are frequently influenced by a Wal-Mart store.
[[Image here]]
“We offer convenient locations and a broad assortment of brand-name quality footwear, apparel and athletic equipment with a high level of customer, service. Our merchandise assortment emphasizes team sports complemented by localized apparel, footwear and accessories .designed to appeal to a wide range of customers within each individual market.”
The injury report lists the employer, as “Hibbett Sports, Inc.,” and lists the employer’s address as being the same address Andrews testified in her affidavit is the principal place of business for Hibbett Sporting Goods.[2] The Hibbett Team Sales home page states, in relevant part:
*1012 “[Hibbett Team Sales] is a full line sporting goods dealer focused on serving schools and teams with their athletic equipment, footwear and apparel needs.
“Hibbett Sporting Goods was founded in 1945 under the name Dixie Supply Company and sold merchandise such as boats, marine equipment and even small aircraft. In 1949 Dixie Supply Company entered the team and school athletic equipment business. ' 1'
“In 1952 Dixie Supply Company became Hibbett and Sons, Inc. Over the next seven years, all merchandise not related to athletic equipment, apparel, and footwear was slowly dropped out of inventory. By 1968 75% of all sales consisted of school and team business. In 1969 the company became [Hibbett Sporting Goods].
“We are now [Hibbett Team Sales], a subsidiary of [Hibbett Sports]. Many things have changed since 1945, but the things that have not changed is our commitment to provide excellent service to our customer and supply quality products at competitive pricing.”
In their affidavits, Chism and Byars testified that representatives from Hibbett Team Sales visited Lamar County to sell athletic equipment and merchandise and that their respective schools purchased such products from Hibbett Team Sales.
On October 10, 2016, Hibbett Sporting Goods filed a response to Cantrell’s reply, asserting, in part, that no agency relationship existed between it and Hibbett Team Sales. Hibbett Sporting Goods supported its response with affidavits from Elizabeth Hill and Frank Powell. In her affidavit, Hill, senior counsel for Hibbett Sporting Goods, testified:
“[Hibbett Sporting Goods] maintains and operates athletic specialty retail stores throughout the United States. [Hibbett Sporting Goods] maintains its own employees, assets, inventory, and business model solely for the purpose of operating its retail store line of business.
“[Hibbett Sports] is a- holding company for publicly traded stock. [Hibbett Sports] does not have any employees, and does not maintain control over the operations of [Hibbett Sporting Goods].
“[The injury report] filed in connection with Mr. Cantrell’s alleged worker’s compensation claim with [Hibbett Sporting Goods] incorrectly lists the employer name as ‘Hibbett Sports, Inc.’ The correct employer is [Hibbett Sporting Goods].”
In his affidavit, Powell, a vice president of Hibbett Team Sales, testified:
“We have no record of a Keith Cantrell ever being employed by [Hib.bett Team Sales]. [Hibbett Team Sales] maintains its own assets, inventory, employees, and website to support its business model of direct sales to educational institutions. [Hibbett Team Sales] operates independently of [Hibbett Sporting Goods] and does not share any of itassets, employees, or facilities with [Hibbett Sporting Goods].”
On October 11, 2016, the trial court conducted a hearing on Hibbett Sporting Goods’ motion to transfer. During the hearing, the trial court initially granted Cantrell’s oral motion to strike the affidavits of Hill and Powell as having been untimely filed. The trial court then withdrew its ruling striking the affidavits of Hill and Powell.
On October 11, 2016, the trial court entered an order denying Hibbett Sporting Goods’ motion to transfer. On October 27, 2016, Hibbett Sporting Goods filed its petition for a writ of mandamus. Cantrell has included in his answer a request that this court not consider the affidavits of Hill and Powell.
*1013 Standard of Review
“‘The proper method for obtaining review of a denial of a motion for a change of venue in a civil action is to petition for the writ of mandamus.’ Ex parte Alabama Great Southern R.R., 788 So.2d 886, 888 (Ala. 2000). Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995). Moreover, our review is limited to those facts that were before the trial court. Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala. 1998).”
Ex parte Pike Fabrication, Inc., 859 So.2d 1089, 1091 (Ala. 2002).
“ ‘The burden of proving improper venue is on the party raising the issue and on review of an order transferring or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial judge.’” Id. (quoting Ex parte Finance America Corp., 507 So.2d 458, 460 (Ala. 1987)). If the movant makes a prima facie showing that a county is an improper venue, the burden shifts to the party asserting proper venue in that county to rebut the prima facie showing. Ex parte Alabama Med. Ctr., 109 So.3d 1114, 1116 (Ala. 2012) (citing Ex parte Movie Gallery, Inc., 31 So.3d 104, 109 (Ala. 2009)). “In addition, this Court is bound by the record, and it eannot consider a statement or evidence in a party’s brief that was not before the trial court.” Ex parte Pike Fabrication, Inc., 859 So.2d at 1091 (citing Ex parte American Res. Ins. Co., 663 So.2d 932, 936 (Ala. 1995)).
Discussion
Hibbett Sporting Goods contends that venue is improper in Lamar County pursuant to § 25-5-1(18), Ala. Code 1975, and § 6-3-7, Ala. Code 1975. Section 25-5-1(18) provides that the term “court” as used in the Workers’ Compensation Act, § 25-5-1 et seq., Ala. Code 1975, means “[t]he circuit court that would have jurisdiction in an ordinary civil action involving a claim for the injuries or death in question .... ” See Ex parte Adams, 11 So.3d 243, 247 (Ala. Civ. App. 2008) (holding that § 6-3-7 applied to the determination of venue in a workers’ compensation case involving a corporate employer). Section 6-3-7(a) provides:
“All civil actions against corporations may be brought in any of the following counties:
“(1) In the county in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of real property that is the subject of the action is situated; or
“(2) In the county of the corporation’s principal office in this state; or
“(3) In the county in which the plaintiff resided, or if the plaintiff is an entity other than an individual, where the plaintiff had its principal office in this state, at the time of the accrual of the cause of action, if such corporation does business by agent in the county of the plaintiffs residence; or
.“(4) If subdivisions (1), (2), or (3) do not apply, in any county in which the corporation was doing business by agent at the time of the accrual of the cause of action.”
It is undisputed that Cantrell’s alleged accident occurred in Shelbyville, Indiana, and that Hibbett Sporting Goods’ principal *1014 office is in Jefferson County. Accordingly, venue is proper in Jefferson County pursuant to § 6-3-7(a)(2), and Lamar County is not a proper venue pursuant to § 6-3-7(a)(1) or (2). “[T]he ‘“catch-all” venue provision, § 6—3—7(a)(4), applies only if no county would be a proper forum under the other three corporate-venue provisions.’” Ex parte Thomasville Feed & Seed, Inc., 74 So.3d 940, 942 (Ala. 2011) (quoting Ex parte Siemag, Inc., 53 So.3d 974, 980 n.3 (Ala. Civ. App. 2010)). Because venue would be proper in Jefferson County under § 6-3-7(a)(2), § 6-3-7(a)(4) does not apply in this case.
Section. 6—3—7(a)(3) provides that a civil action may be brought against a corporation “[i]n the county in which the plaintiff resided ... if such corporation does business by agent in the county of the plaintiffs residence.” There is no dispute as to Cantrell’s residency in Lamar County. In its motion to transfer, Hibbett Sporting Goods submitted the affidavit of Andrews in which she testified that Hib-bett Sporting Goods did not do business by agent or otherwise in Lamar County. Hibbett Sporting Goods, therefore, presented a prima facie showing that venue in Lamar County was not proper pursuant to § 6-3-7(a)(3). Accordingly, the burden shifted to Cantrell to rebut that prima facie showing.
In his response to the motion to transfer, Cantrell asserted that Hibbett Team Sales was an agent for Hibbett Sporting Goods in Lamar County for the purpose of determining venue under § 6—3—7(a)(3).
“[I]n Ex parte Peabody Galion Co., 497 So.2d 1126 (Ala. 1986), [the supreme court] held that the standard for testing agency for venue purposes is different from the standard for testing agency for the purpose of liability, [The supreme court] discussed the standard as follows:
“‘The term .“agency” is frequently used to describe an arrangement which does not rise to the level of a principal/agent relationship and which is not governed by the law of respondent superior. See Black’s Law Dictionary, (rev. 4th ed. 1968); and 3 Am. Jur. 2d Agency § 2, p. 510. Indeed, that term “is also often used in statutes or constitutional provisions in a more restricted sense than that commonly given it, and, where so used, its significance must generally be determined by a study of the context.” 2A C.J.S. Agency § 4, p. 557 (1972).
[[Image here]]
“Id. at 1128-29. Peabody tells us that for the purpose of venue, the element of control, or lack thereof, of the principal over its.agent is not determinative, Id. at 1129. If the entity is the ‘means’ by which the principal is able to do business in a particular bounty, then the entity is the ‘agent’ of the principal for venue purposes. In Peabody, [the supreme court] found that an independent corporation, acting as a distributor of products for another corporation, was .an ‘agent’ for the purpose of venue, because it was a ‘means’ by which the principal corporation did business. Id.“
Ex parte Charter Retreat Hosp., Inc., 538 So.2d 787, 789-90 (Ala. 1989). “ ‘ “[A] corporation ‘does business’ in a county for purposes of § 6-3-7 if, with some regularity, it performs there some of the business functions for which it was created.” ’ ” Ex parte Pike Fabrication, 859 So.2d at 1093 (quoting Ex parte Wiginton, 743 So.2d 1071, 1074-75 (Ala. 1999), quoting in turn Ex parte SouthTrust Bank of Tuscaloosa, N.A., 619 So.2d 1356, 1358 (Ala. 1993)). “Doing business” includes “the sale of [a] corporation’s products.” Ex parte Peabody Galion Co., 497 So.2d 1126, 1129 (Ala. 1986).
*1015 The materials submitted by both parties indicate that both Hibbett Sporting Goods and Hibbett Team Sales are subsidiaries of Hibbett Sports. Although the evidence indicates that Hibbett Sports is the principal of both Hibbett Sporting Goods and Hibbett Team Sales, § 6—3—7(a)(3) requires that the defendant corporation have an agent, not a principal, that does business in-the county. See Ex parte Diamond Scaffold Servs. Grp., Inc., 159 So.3d 1286, 1289 (Ala. Civ. App. 2014) (holding that there was no legal authority “standing for the proposition that an action may be brought against an agent in a county where its principal does business”).
Cantrell argues that Hibbett Sporting Goods is the sole operating subsidiary of Hibbett Sports and that, therefore, Hibbett Team Sales is controlled by Hibbett Sporting Goods. Even if the evidence established that type of relationship between the companies, “the element of control, or lack thereof, of the principal over its agent is not determinative.” Ex parte Charter Retreat Hosp., Inc., 538 So.2d at 789. The evidence presented in support of Cantrell’s reply to the motion to transfer indicates that both Hibbett Sporting Goods and Hibbett Team Sales sell athletic equipment and merchandise but that Hibbett Sporting Goods sells its products through its retail stores and Hibbett Team Sales sells its products directly to schools. For the purposes of venue, an agent must be the “ ‘means’ by which the principal is able to do business in a particular county.” Id. at 790. The only business function raised by Cantrell is the sale of products. The materials submitted to us do not show that Hibbett Team Sales sells Hibbett Sporting Goods’ products in Lamar County' or enables Hibbett Sporting Goods to sell its products in Lamar County. Moreover, Hibbett Sporting Goods preented testimonial evidence indicating that Hibbett Team Sales operates independently of Hibbett Sporting Goods and has separate inventory, assets, employees, and. facilities.[3] Therefore, the evidence submitted to the trial court fails to show that Hibbett Team Sales was Hibbett Sporting Goods’ agent, in Lamar County for the purpose of determining venue under § 6-3-7(a)(3).
Conclusion
: Based on' the foregoing, we hold that Hibbett Sporting Goods has demonstrated a clear , legal right to a writ of mandamus directing the trial court to vacate its order denying the motion to change venue and to .enter an order transferring this action to the Jefferson Circuit Court.
PETITION GRANTED; WRIT ISSUED.
Thompson, P.J., and Pittman, Thomas, and Moore, JJ., concur.

. The Hibbett Sports annual report is an excerpt from a document that Cantrell asserted was Hibbett Sports' Form 10-k filed with the Securities and Exchange Commission for the year ending January 30, 2015.

. The parties do not dispute that Hibbett Sporting Goods was Cantrell’s employer.

. Cantrell requested that this court not consider the affidavits of Hill and Powell on the basis that they were untimely filed pursuant to Rule 6(d), Ala. R. Civ. P., which provides: "[0]pposing affidavits may be served not later than one (1) day before the hearing, unless the court permits them to be served at some other time.” Even though the affidavits of Hill and Powell were submitted the day before the hearing on the motion to transfer, the trial court allowed the submission of the affidavits. The consideration of untimely affidavits is within the trial court's discretion. Weldon v. Cotney, 811 So.2d 530, 533 (Ala. 2001). Cantrell fails to argue that the trial court exceeded its discretion in considering the affidavits, We therefore decline Cantrell's request that we not consider the affidavits..