DONALDSON, Judge.
Mercedes-Benz U.S. International, Inc. ("MBUSI"), petitions this court for a writ of mandamus directing the Jefferson Circuit Court ("the trial court") to enter an order transferring the underlying workers' compensation action to the Tuscaloosa Circuit Court. For the reasons set forth below, we deny the petition.
Facts and Procedural History
MBUSI produces certain models of Mercedes-Benz vehicles. On August 22, 2017, Gregory K. Nix filed in the trial court a complaint against MBUSI seeking workers' compensation benefits. Nix claimed that he was injured in the course of his employment as an assembly worker at MBUSI's facility in Tuscaloosa County. On September 22, 2017, MBUSI filed an *1213 answer, alleging, among other things, that venue was improper in Jefferson County, and a motion to change venue, contending that venue was proper only in Tuscaloosa County but that, even if venue was proper in Jefferson County, the venue should be changed to Tuscaloosa County under the doctrine of forum non conveniens.
On September 25, 2017, Nix filed a response opposing the motion to change venue. In his response, he asserted that he was a resident of Jefferson County and that MBUSI does business in Jefferson County as well as in Tuscaloosa County. Nix submitted a copy of property-tax records from Jefferson County indicating that his address was in Jefferson County and a copy of a Web page from the Alabama Secretary of State's Web site indicating "Birmingham, Alabama" as MBUSI's principal address. Nix asserted that MBUSI's products are sold in Jefferson County through Mercedes-Benz of Birmingham ("the automobile dealership") and that some of MBUSI's major parts suppliers such as Kamtek, Inc., are located in Jefferson County. In support of his assertions, Nix referred to MBUSI's Web site and attached news articles regarding Kamtek. Nix also attached to his response an affidavit in which he testified that all medical treatments for the claimed injury were received in Jefferson County and that potential trial witnesses reside in Jefferson County.
On September 29, 2017, MBUSI filed a supplement to its motion to change venue. In the supplement, MBUSI argued that the automobile dealership and Kamtek are not its agents through which it does business in Jefferson County. MBUSI asserted that the circumstances of its relationship with Kamtek do not constitute that of an agent for venue purposes and that it has no connection with the automobile dealership in Jefferson County because all the automobiles MBUSI produces are sold directly to a separate legal entity, Mercedes-Benz USA, LLC ("MBUSA"), which has sole control and contact with the automobile dealership and other dealerships. MBUSI attached to its supplement the affidavit of Richard Clementz, general counsel for MBUSI, in which he testified, in relevant part:
"2. MBUSI is a corporation that is organized under the laws of the State of Alabama, with its headquarters, principal place of business and principal office located at 1 Mercedes Drive, Vance, Alabama, located in Tuscaloosa County. MBUSI's current registered agent for service of process is attorney Edward R. Christian of Burr & Forman, LLP, in Jefferson County, Alabama. However, Mr. Christian is not an employee of MBUSI and MBUSI maintains no office at Burr & Forman.
"3. To the extent the Secretary of State website lists 'Birmingham, AL' as MBUSI's 'principal address,' such listing is inaccurate. MBUSI has no corporate offices in Jefferson County, Alabama.
"4. MBUSI's manufacturing facility is located at 1 Mercedes Drive, Vance, Tuscaloosa County, Alabama. The plaintiff's employment with the defendant was located at MBUSI's manufacturing facility in Tuscaloosa County, and any alleged work injury would have occurred there as well.
"5. The vehicles manufactured by MBUSI for sale in the United States are all sold to Mercedes-Benz USA, LLC ('MBUSA'). MBUSA is a separate corporate entity with its principal place of business in Atlanta, Georgia.
"6. MBUSI is not involved in, and does not control distribution or sale of Mercedes-Benz vehicles to consumers anywhere in the world, including the United States. For all vehicles sold in the United *1214 States, MBUSA takes delivery, title and possession of the vehicles and MBUSA transports, delivers and sells all vehicles in the United States.
"7. MBUSI has no relationship, contractual or otherwise, with any Mercedes-Benz dealership located in Alabama, nor does MBUSI have control over the actions, rights or obligations of any such dealers.
"8. Kamtek is an auto supplier which provides some parts for MBUSI. Kamtek is a separate and unrelated corporation. Upon information and belief, Kamtek is owned by a Canadian Corporation. The parts supplied by Kamtek are delivered by Kamtek to MBUSI at 1 Mercedes Drive, Vance, AL. MBUSI does not take delivery of parts from Kamtek or any other supplier, at any location other than 1 Mercedes Drive, Vance, AL.
"9. MBUSI does not do business by agent in Jefferson County, Alabama. The Mercedes Benz Automobile dealership located in Hoover, Alabama is not affiliated with, owned by, or franchised from MBUSI. MBUSI does not sell vehicles to the Mercedes Benz automobile dealership located in Hoover, Alabama, and has no contractual relationship with the automobile dealership in Hoover, Alabama. MBUSI has no ownership interest in Kamtek, and does not accept delivery of parts from Kamtek in Jefferson County, Alabama."
In its supplement, MBUSI further argued that the doctrine of forum non conveniens required a transfer of the action to the Tuscaloosa Circuit Court. MBUSI asserted that Tuscaloosa County was a more convenient forum because, it stated, potential witnesses to the alleged injury and Nix's supervisors were employed in Tuscaloosa County and the alleged injury occurred there. MBUSI also asserted that Tuscaloosa County has a substantial interest in the action because it is the county in which the alleged injury occurred and that the only connection Jefferson County has to the action is Nix's residency there.
On October 13, 2017, the trial court entered an order denying MBUSI's motion to change venue. On November 21, 2017, MBUSI filed the present petition for a writ of mandamus, and Nix filed an answer.
Standard of Review
" 'The proper method for obtaining review of a denial of a motion for a change of venue in a civil action is to petition for the writ of mandamus.' Ex parte Alabama Great Southern R.R., 788 So.2d 886, 888 (Ala. 2000). 'Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995). Moreover, our review is limited to those facts that were before the trial court. Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala. 1998).
" 'The burden of proving improper venue is on the party raising the issue and on review of an order transferring or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial judge.' Ex parte Finance America Corp., 507 So.2d 458, 460 (Ala. 1987). In addition, this Court is bound by the record, and it cannot consider a statement or evidence in a party's brief that was not before the trial court. Ex parte American Res. Ins. Co., 663 So.2d 932, 936 (Ala. 1995)."
*1215 Ex parte Pike Fabrication, Inc., 859 So.2d 1089, 1091 (Ala. 2002).
Discussion
MBUSI first contends that the action should be transferred to the Tuscaloosa Circuit Court on the basis that Jefferson County is an improper venue. In a workers' compensation case, § 6-3-7, Ala. Code 1975, applies to the determination of proper venue involving a corporate employer. See § 25-5-1(18), Ala. Code 1975 (defining "court" in the Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975, as "[t]he circuit court that would have jurisdiction in an ordinary civil action involving a claim for the injuries or death in question ...."); Ex parte Adams, 11 So.3d 243, 247 (Ala. Civ. App. 2008) (applying § 6-3-7 to the venue determination of a workers' compensation case involving a corporate employer). Section 6-3-7(a) provides:
"All civil actions against corporations may be brought in any of the following counties:
"(1) In the county in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of real property that is the subject of the action is situated; or
"(2) In the county of the corporation's principal office in this state; or
"(3) In the county in which the plaintiff resided, or if the plaintiff is an entity other than an individual, where the plaintiff had its principal office in this state, at the time of the accrual of the cause of action, if such corporation does business by agent in the county of the plaintiff's residence; or
"(4) If subdivisions (1), (2), or (3) do not apply, in any county in which the corporation was doing business by agent at the time of the accrual of the cause of action."
We note that Nix's complaint alleges that he incurred the injury in Tuscaloosa County. Therefore, Tuscaloosa County would be a proper venue pursuant to § 6-3-7(a)(1). However, Nix brought the action in Jefferson County, and that venue is improper only if it does not meet any of the four conditions provided in § 6-3-7(a).
MBUSI argues that, although Nix resides in Jefferson County, venue was not proper in Jefferson County pursuant to § 6-3-7(a)(3) because, MBUSI asserts, it does not do business by agent in that county.
" ' " '[A] corporation "does business" in a county for purposes of § 6-3-7 if, with some regularity, it performs there some of the business functions for which it was created.' " ' Ex parte Pike Fabrication[, Inc.], 859 So.2d [1089,] 1093 [ (Ala. 2002) ] (quoting Ex parte Wiginton, 743 So.2d 1071, 1074-75 (Ala. 1999), quoting in turn Ex parte SouthTrust Bank of Tuscaloosa, N.A., 619 So.2d 1356, 1358 (Ala. 1993) )."
Ex parte Hibbett Sporting Goods, Inc., 228 So.3d 1008, 1014 (Ala. Civ. App. 2017). The materials before the trial court showed that MBUSI purchased parts for automobile production from Kamtek, an entity located in Jefferson County. In Ex parte GTE Automatic Electric, Inc., 448 So.2d 385, 387 (Ala. Civ. App. 1984), this court held that, for the purposes of a venue determination, a trial court reasonably found that a defendant corporation ("GTE") did business by agent in the county in which its parts supplier ("Webco") was located, based on evidence showing the following:
"Webco, a tool and die manufacturer, has done business with GTE for over twelve years, making piece parts inter alia for GTE. During this twelve-year period, agents of GTE visited Webco's plant at least twice a month where they *1216 would work with Webco's employees, assist Webco's engineers and discuss the business relationship between Webco and GTE. GTE frequently sent representatives to Webco's plant to assist in resolving casting problems that arose with new products. GTE's plant manager, superintendent and purchasing agent all made annual inspection tours of Webco.
"GTE supplied Webco with certain tools and equipment necessary for manufacturing the parts ordered by GTE. The tools and equipment were maintained and stored at Webco for the purpose of filling orders by GTE as they came in. GTE frequently supplied Webco with the necessary raw materials to make the ordered parts. The president and general manager of Webco testified in deposition that over $2,600,000 worth of such business was done between Webco and GTE."
Although this court discussed the relationship between GTE and its parts supplier in detail in order to determine whether the relationship constituted doing business by agent, such a detailed examination does not appear to be required under our supreme court's holding in Ex parte Scott Bridge Co., 834 So.2d 79 (Ala. 2002). In that case, our supreme court held that a defendant corporation did business by agent through a parts supplier in a specific county, stating:
"Scott Bridge notes that it is in the business of constructing bridges and it argues that because it has not built a bridge in Chambers County, it has not 'done business by agent' there. The business of Scott Bridge, however, should not be considered so narrowly. To fulfill its principal corporate function of building bridges, Scott Bridge must purchase parts, tools, and equipment with which to perform that principal corporate function. Bond asserts, and Scott Bridge does not refute, that Scott Bridge buys from businesses located in Chambers County supplies that cost in excess of $50,000 a year.
"....
"... Scott Bridge 'purchased handrail pipe, handrail posts, protection anchors, supports, and shoes which are used in Scott Bridge's business [of bridge building].' (Trial court's order denying the motion for a change of venue.) Scott Bridge could presumably have purchased these materials elsewhere, and thus fulfilled its corporate purpose entirely outside of Chambers County, but spending more than $50,000 per year in Chambers County on materials necessary to bridge construction is sufficient to constitute 'doing business' in Chambers County."
Id. at 81-82.
MBUSI asserts that Scott Bridge is distinguishable because it conducts its primary business function of manufacturing automobiles at a single location in Tuscaloosa County as opposed to Scott Bridge's business of constructing bridges in multiple counties in Alabama. MBUSI further asserts that it does not do business in Jefferson County because Kamtek delivers and MBUSI receives its parts in Tuscaloosa County. However, it appears that, under the holding in Scott Bridge, the only inquiry required is whether MBUSI regularly transacted with a supplier in Jefferson County to purchase parts that were used to fulfill a primary business function. See Ex parte Elliott, 80 So.3d 908, 914 (Ala. 2011) ("The evidence showed that Scott Bridge had purchased from vendors in Chambers County in excess of $50,000 worth of supplies necessary for building bridges; [the supreme court] held that that constituted doing business in Chambers County."). As asserted by MBUSI, the *1217 manufacturing of automobiles is a primary business function of the corporation. MBUSI does not refute that it chose to do business with Kamtek, that it regularly purchases parts used in its automobile manufacturing from Kamtek, or that Kamtek is located in Jefferson County. Based on the materials submitted to us and the holding in Scott Bridge, we must conclude that MBUSI conducted business by agent in Jefferson County pursuant to § 6-3-7(a)(3).
MBUSI urges this court to overrule Scott Bridge and argues that it cannot be considered to have conducted business in Jefferson County based on the facts of the case. In Ex parte West Fraser, Inc., this court addressed a petitioner's challenge to the holding in Scott Bridge, stating: "Although [the petitioner] makes compelling arguments as to why that decision should be overruled, 'this court is bound by the decisions of our supreme court. Ala. Code 1975, § 12-3-16. We are not at liberty to overrule or modify those decisions.' " 129 So.3d 286, 292 (Ala. Civ. App. 2013) (quoting TenEyck v. TenEyck, 885 So.2d 146, 158 (Ala. Civ. App. 2003), citing in turn Thompson v. Wasdin, 655 So.2d 1058 (Ala. Civ. App. 1995) ). As in Ex parte West Fraser, we are compelled by Scott Bridge to uphold the trial court's denial of MBUSI's motion to change venue, and we pretermit further discussion of MBUSI's arguments regarding that issue.
MBUSI also contends that the doctrine of forum non conveniens compels a transfer of the action from Jefferson County to Tuscaloosa County.
"With respect to civil actions filed in an appropriate venue, any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action might have been properly filed and the case shall proceed as though originally filed therein."
§ 6-3-21.1(a), Ala. Code 1975. As previously noted, venue was also appropriate in Tuscaloosa County. Therefore, we must determine whether MBUSI met its burden of proving that a transfer of the action was mandated.
"A party moving for a transfer under § 6-3-21.1 has the initial burden of showing, among other things, one of two factors: (1) that the transfer is justified based on the convenience of either the parties or the witnesses, or (2) that the transfer is justified 'in the interest of justice.' Ex parte Masonite Corp., 789 So.2d 830, 831 (Ala. 2001) ; Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala. 1998). A party may show that either or both of these factors require a transfer."
Ex parte Indiana Mills & Mfg., Inc., 10 So.3d 536, 539 (Ala. 2008).
In its petition, MBUSI argues that Tuscaloosa County is a significantly more convenient venue than Jefferson County.
"When venue is appropriate in more than one county, the plaintiff's choice of venue is generally given great deference. Ex parte Bloodsaw, 648 So.2d 553, 555 (Ala. 1994). However, where the defendant presents evidence indicating that the chosen venue will be inconvenient for him, the trial court has the discretion to transfer the case to a more convenient forum. The purpose of the doctrine of forum non conveniens is to 'prevent the waste of time, energy, and money and also to protect witnesses, litigants, and the public against unnecessary expense and inconvenience.'
*1218 Ex parte New England Mut. Life Ins. Co., 663 So.2d 952, 956 (Ala. 1995) ; Ex parte Townsend, 589 So.2d 711, 714 (Ala. 1991). The burden of proof in seeking a transfer under this doctrine rests squarely on the shoulders of the defendant. Ex parte New England Mut. Life Ins. Co., 663 So.2d at 956. The defendant must show that his inconvenience and expense in defending the action in the selected forum outweigh the plaintiff's right to choose the forum; that is, the defendant must suggest transfer to a county that is 'significantly more convenient' than the county in which the action was filed. Id."
Ex parte Perfection Siding, Inc., 882 So.2d 307, 312 (Ala. 2003).
MBUSI asserts that the alleged injury occurred in Tuscaloosa County. It also asserts that its principal place of business, including its repository of employment documentation, is located in Tuscaloosa County and, therefore, that any witness who is an employee at MBUSI works in Tuscaloosa County and, also, that any witness who investigates the work conditions in regard to Nix's claims must do so in Tuscaloosa County. However, "the convenience of nonparty witnesses that are employees of one of the parties to the case, and therefore whose presence may be obtained by one of the parties, does not weigh heavily in favor of a transfer." Ex parte Veolia Envtl. SVC, 122 So.3d 839, 842 (Ala. Civ. App. 2013). Moreover, even if venue in Jefferson County were to present an inconvenience for a witness who had investigated Nix's work conditions, venue in Tuscaloosa County would likewise inconvenience potential witnesses who live or work in Jefferson County. We note that MBUSI additionally asserts that Nix cannot claim inconvenience with traveling from Jefferson County to Tuscaloosa County, the location of his former workplace. That lack of inconvenience would also apply to any voluntary witness traveling from Tuscaloosa County to Jefferson County. Moreover, the evidence before the trial court indicated that potential witnesses, Nix and his wife, reside in Jefferson County and that Nix received medical treatments from two physicians located in Jefferson County.
" '[T]he doctrine of forum non conveniens"provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." ' " Ex parte Veolia Envtl. SVC, 122 So.3d at 842-43 (quoting Ex parte Nichols, 757 So.2d 374, 379 (Ala. 1999), quoting in turn Van Dusen v. Barrack, 376 U.S. 612, 645-46, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) ). MBUSI had the burden to prove that Tuscaloosa County was a significantly more convenient forum compelling a transfer of the action from Jefferson County. See Ex parte Perfection Siding, supra. We conclude that MBUSI's assertions do not establish that the trial court exceeded its discretion in determining that MBUSI did not meet its burden.
MBUSI further argues that the interest-of-justice prong of the doctrine of forum non conveniens mandated a transfer of the action to Tuscaloosa County. Our supreme court has held:
"Our forum non conveniens analysis has never involved a simple balancing test weighing each county's connection to an action. Rather, to compel a change of venue under the 'interest of justice' prong of § 6-3-21.1, the county to which the transfer is sought must have a 'strong' nexus or connection to the lawsuit, while the county from which the transfer is sought must have a 'weak' or 'little' connection to the action. This inquiry necessarily depends on the facts of each case."
*1219 Ex parte J & W Enters., LLC, 150 So.3d 190, 196 (Ala. 2014). As asserted by MBUSI, Tuscaloosa County has an interest in the action because of the location of MBUSI's facility and workers there. However, MBUSI's burden included establishing that Jefferson County had only a weak or little connection to the action. Although MBUSI submitted evidence indicating that it is located in Tuscaloosa County where the alleged injury occurred, it is undisputed that Nix resides in Jefferson County and received medical treatment there. In Ex parte Siemag, Inc., 53 So.3d 974, 980 (Ala. Civ. App. 2010), this court held that, "[a]lthough it is a valid principle of law that ordinarily 'litigation should be handled in the forum where the injury occurred,' Ex parte Sawyer, 892 So.2d 898, 904 (Ala. 2004), the Legislature clearly envisioned that persons in the plaintiffs' situation would have the choice of bringing their action in the county of their residence."
In its petition, MBUSI asserts that a party's residence in the forum does not prevent a transfer under the interest-of-justice prong, citing Ex parte Baptist Health System, Inc., 210 So.3d 618 (Ala. Civ. App. 2016). That assertion does not in itself establish that Jefferson County has a weak connection to the action. Moreover, in Ex parte Baptist Health System, this court held that a county had a stronger connection to a case, in part, because the plaintiff resided there. Although MBUSI asserts that potential witnesses may be employed or investigate work conditions in Tuscaloosa County, Jefferson County also has a connection to the action through the potential witnesses who live or work there. Cf. Ex parte Interstate Freight USA, Inc., 213 So.3d 560, 571 (Ala. 2016) (citing the lack of potential witnesses from a county as a reason for a change of venue). In addition, we note that, in Ex parte West Fraser, we held that a reason in favor of a change in venue under the interest-of-justice prong of the doctrine of forum non convenience was that the plaintiff's medical treatment of injuries occurred only in the county of the transferee venue and not the county of the plaintiff's residence and chosen venue. In this case, however, Nix not only resides in Jefferson County, but he also received medical treatment there. We conclude that MBUSI has not established that Jefferson County has only a weak or little connection to the action. Therefore, we hold that MBUSI has not demonstrated that the trial court exceeded its discretion in denying a change of venue on the basis of the interest-of-justice prong under the doctrine of forum non conveniens.
Conclusion
Based on the foregoing, we hold that the MBUSI has not demonstrated a clear legal right to a writ of mandamus directing the trial court to transfer the action to Tuscaloosa County. The petition for a writ of mandamus, therefore, is due to be denied.
PETITION DENIED.
Thompson, P.J., and Pittman, Thomas, and Moore, JJ., concur.